This is a suit by A. F. Akin, d/b/a Akin Truck Line, against Preston J. Barras, d/b/a Barras Transfer Line, in which Akin, plaintiff, is seeking the recovery of $152.75 which represents the value of certain merchandise which plaintiff alleged was delivered to defendant but never delivered by the defendant to Louis Wormser, Franklin, Louisiana, the consignee.
Plaintiff alleged that he was a resident of Caddo Parish and was the owner of and doing business under the trade name of Akin Truck Line and, as such, was engaged in the business of transporting freight over various routes including one from Fort Worth, Texas to New Orleans, Louisiana, and that Preston J. Barras was a resident of the Parish of Lafayette, Louisiana, and was engaged in the business of trucking freight as a common carrier under the trade name Barras Transfer Line. It is alleged that on June 3, 1943, petitioner received from Williamson-Dickie Manufacturing Company of Fort Worth, Texas as the consignor, one carton of merchandise containing men's cotton work clothing and consigned to Louis Wormser of Franklin, Louisiana as the consignee, and that plaintiff, upon receiving this merchandise, transported it to New Orleans, Louisiana, and delivered it to the Barras Transfer Line there for final delivery to the consignee at Franklin, Louisiana Plaintiff alleged that the delivery of these goods to the Barras Transfer Line in New Orleans is evidenced by original signed copy of way bill No. 6500, duly signed by Barras Transfer Line *Page 884 
and which plaintiff has made a part of and annexed to this petition. Plaintiff further alleged that this merchandise was never delivered by the defendant and that as a result of its failure to deliver said merchandise, a claim was signed by Williamson-Dickie Manufacturing Company, the consigner, for the failure thereof in the sum of $152.75, which plaintiff paid to the consignor. Plaintiff, therefore, in this suit prays for judgment for this amount against the defendant, Preston J. Barras, d/b/a Barras Transfer Line for the loss of and failure to deliver said goods to the consignee.
Preston J. Barras, d/b/a Barras Transfer Line, the defendant herein, filed answer which was a general denial of the allegations of plaintiff's petition and, although admitting that the bill of lading No. 6500 was duly signed by the agent of the Barras Transfer line, "A. Fremin," further set up in the answer that the signature of this agent of the defendant on the way bill or delivery receipt Number 6500 which is attached to plaintiff's petition was secured through the misrepresentation of the agent or representative of the Akin Truck Line in the City of New Orleans; that the shipment of merchandise involved in this case was never delivered by Akin Truck Line to the Barras Transfer Line; that on account of the failure of the Akin Truck Line to deliver the merchandise covered by the way bill or delivery receipt Joe Dronet, who is the agent of the defendant in New Orleans, refused to sign this receipt when presented to him for his signature and that sometime thereafter the same agent of the Akin Truck Line, in the absence of Joe Dronet from defendants' New Orleans office, presented this delivery receipt or way bill to Mrs. A. Fremin, who was a clerk in the defendant's New Orleans Office, and told her at the time that Joe Dronet had checked this shipment and sent him, plaintiff's agent, to her (Mrs. Fremin) to have the freight bill signed. Defendant further answered that the shipment had not been received and had not been checked by Joe Dronet, and that Joe Dronet did not tell the agent of the Akin Truck Line to have Mrs. Fremin sign the way bill or receipt, and that, accordingly, the statement of the agent of the Akin Truck Line was false, deceptive and fraudulent and, therefore, the signature of Mrs. A. Fremin, defendant's clerk in New Orleans, was obtained through such "false representation and pretenses of plaintiff's agent and has no binding affect on the defendant."
The case was duly tried and the Judge of Lower Court rendered judgment in favor of the defendant and against the plaintiff, dismissing plaintiff's suit at its cost and plaintiff has appealed from this adverse judgment.
It is undisputed that the Akin Truck Line received from Williamson-Dickie Manufacturing Company of Fort Worth, Texas, a carton of merchandise containing men's work clothes consigned to Louis Wormser at Franklin, Louisiana, which goods were hauled to New Orleans, Louisiana. The plaintiff transfer line and the defendant transfer line at that time used the same warehouse or terminal in New Orleans, and the place where the freight was loaded and unloaded in New Orleans was referred to as a dock and it was jointly used by both companies, in other words, both companies would unload freight in New Orleans on a common dock and any freight that was to be delivered to either company would simply be transferred to that particular company's side of the dock. There were no partitions between the part of the dock used by Akin Truck Line and the part used by Barras Transfer Line.
The signature of A. Fremin, who was the clerk of the defendant company, on the way bill or delivery receipt No. 6500 is admitted. There is no dispute that the plaintiff has paid to the consignor, Williamson-Dickie Manufacturing Company, $152.75, the full value of the carton of merchandise.
Plaintiff testified that he was the owner of Akin Truck Line which had received the carton of merchandise consigned to Louis Wormser in Franklin, Louisiana, and he identified the delivery receipt annexed to plaintiff's petition, numbered 6500 and testified that it was the delivery receipt that his line would get when it delivered a shipment to an adjoining carrier for *Page 885 
final delivery and that this receipt showed that Mrs. A. Fremin had received this shipment for Barras Transfer Line; that when the goods were not delivered to the consignee in Franklin, Louisiana, his agent, a Mr. J. L. McCoy, contacted the defendant truck line but that they did nothing about it and he was forced to pay the value of the goods to the consignor which he did by check, which check is introduced in evidence. Plaintiff testified that it was nothing unusual for Mrs. Fremin as agent for the Barras Transfer Line to sign these way bills or delivery receipts, acknowledging delivery of freight to the Barras Transfer Line. Plaintiff has introduced six such delivery receipts signed "Delivery Receipt-Received in good order and condition By Barras Transfer, Consignee-A. Fremin." Plaintiff also testified that at no time had there ever been any complaint or question as to her authority to sign these delivery receipts, as it was necessary for Joe Dronet, who was employed by the defendant truck line to check inbound and outbound freight that came to the dock to be out "on the pick up and soliciting business." Plaintiff stated that he had picked out at random from his files the six delivery receipts produced in evidence and he had others in his files at Shreveport which showed the custom of Mrs. Fremin to sign for these shipments.
Plaintiff testified that prior to the claim having been formally filed that the defendant truck line told him, "Well, we will get your delivery receipt on that and after a short while prove delivery," but that after the final formal claim was filed they said they did not receive the goods. The defendant had introduced two letters written by the plaintiff company to T.S.C. Motor Line and Herrin Motor Line in which letters the plaintiff notified these companies that this carton of merchandise was checked short on their New Orleans dock and, as his line very often interlined freight with these companies, plaintiff thought that possibly this carton might have been left on their dock by mistake and asked them to check their dock very carefully for this carton. Plaintiff's explanation of these letters is to the effect that after the defendant truck line could not prove delivery or find any record of where they had delivered the shipment "they asked us would we please help them check docks where our trucks went to see if we could recognize the shipment or help them find same. It is the custom with all truck lines to help one another to keep down claims and to see that merchandise reaches the consignee, and we put out some form letters trying to assist them in this case. I may add that at about the same time I had asked Mr. Dronet to look up and down his line docks to see if there was any stray freight that might belong to me."
On cross examination, plaintiff testified that his record showed that he physically handled the shipment covered by this way bill and delivery receipt Number 6500 when it arrived in Shreveport, Louisiana, on its route to New Orleans, however, that he did not remember each instance but that he did have such a permanent record as would show whether or not he personally handled the shipment. Plaintiff further positively testified that his record shows that he checked out this shipment in Shreveport and it was checked in by his agent in New Orleans and signed for by him and shows it was received along with the freight bills and freight shipped in New Orleans.
Plaintiff has also offered the testimony of J. L. McCoy who was employed by the plaintiff truck line at New Orleans on the date that this carton of merchandise is alleged to have been delivered to the defendant truck line. McCoy testified that he was the agent for the plaintiff truck line in New Orleans and had charge of all inbound and outbound freight and checked the freight that moved directly across the dock of the plaintiff truck line, and that he had handled the carton of merchandise in question and had personally put it on the side of the dock belonging to or used by Barras Transfer Line, and that after putting this merchandise on the defendant truck line side of the dock he presented the bill to Mrs. Fremin for her signature. In answer to an interrogatory which was propounded to McCoy and in which he was asked whether Mrs. Fremin checked to see whether the merchandise was transferred or if he had personally *Page 886 
checked the transfer of the merchandise, he answered: "I had personally checked it myself." He was further interrogated as follows:
"Are you in a position to swear positively that the merchandise referred to in the way-bill number 6500, photostatic copy attached to this interrogatory was actually delivered by Akin Truck Line into the possession of the representatives of Barras Transfer Line? Please state whether you are testifying from your own personal knowledge."
To this, McCoy answered:
"Yes, it was, and I am testifying from my own personal knowledge."
McCoy testified there was a lot of other freight on the dock that day belonging to both companies and that he did not pay any more particular attention to this one carton of Merchandise after it was delivered to the defendant truck line but that it was customary for Mrs. Fremin to sign the delivery receipts as she had done in this case; that this shipment was delivered the same as any number of other shipments of a similar nature. McCoy stated that he had written the letters to the T.S.C. Motor Line and Herrin Motor Line and had given them to Mrs. Fremin "as evidence of the fact that I had written the connecting lines with which we sometimes interlined freight in an effort to help them locate the merchandise."
The defendant Barras testified that he had personally investigated the entire matter and had discussed it with his employee Dronet and with Mr. McCoy, employee of Akin Truck Line. He testified that McCoy, when he talked to him, "was very certain that he was holding a signature from A. Fremin, but he wasn't certain of seeing the package or dragging the package across the dock." McCoy also, at that time, offered to do anything he could to try to locate the missing package and, as a result, wrote the letters to Herrin and T.S.C. truck lines in Alexandria and sent a carbon copy to the defendant Barras. This testimony by Barras is clearly corroborative of McCoy's testimony as to the reason for writing letters to these other truck lines and would destroy the value of these letters as evidence against the plaintiff. Defendant testified that as far as he knew, the shipment in question was never delivered to his truck line in New Orleans or anywhere else. Of course, this knowledge was based upon what he was told by his employees, mainly. Barras also testified that they searched the docks package by package in order to try to locate this merchandise. Therefore, it would seem that the fact that the plaintiff truck line, in their effort to locate the package, wrote letters to other truck lines would be no more of an admission or evidence that they had not delivered the package to the defendant than the defendant, in searching the docks package by package, would be admitting that they received the package. This action on the part of both parties was merely an effort by each to locate the merchandise if possible. Barras testified that Mrs. Fremin did not have authority to sign receipts such as the one involved in this case, however, he admits that she did sign such receipts and that he recognized the validity of her action.
Joe G. Dronet testified that at the time that this carton of merchandise was supposed to have been delivered by the plaintiff truck line to the defendant truck line in New Orleans that he was employed to check inbound and outbound freight and also to receipt for same; that he spent most of his time on the dock and, on the day in question, he testified that he did not remember anything about the shipment from Williamson-Dickie Manufacturing Company to Louis Wormser which is involved in this suit except that he had seen the way bill but did not see the box, and on the same day that he was shown a way bill for Louis Wormser of Franklin, Louisiana, that there was also another way bill for J. J. Wormser, Jeanerette, Louisiana, and that this shipment was damaged and, as neither of them had a pencil on the dock, he told the agent of the plaintiff truck line to " 'go in the office and sign the damage on the bill,' and he put his name on it and gave the bill to the girl and gave the wrong bill to the girl, Miss Freeman." He testified that he did not receive from the Akin Truck Line the shipment involved in this suit and that he did not tell Mr. McCoy, agent of the plaintiff, *Page 887 
to have Mrs. Fremin receipt for the shipment covered by way bill No. 6500. He testified that when he was shown way bill No. 6500, he asked where the freight was and that, as McCoy could not show him the box of merchandise, he would not sign the receipt, and that this was on the same occasion that the box consigned to J. J. Wormser by Williamson-Dickie came in and was damaged; that the two cartons of merchandise came in on the same truck. This witness also testified that J. L. McCoy wrote the letters introduced in evidence to the other lines at the request of he and Mr. Barras. He also testified that Mrs. Fremin checked merchandise herself when he was not in. He testified that Mrs. Fremin's duties were running the office, typing the bills and, in case he was not there, she would sign for packages that would come in on the trucks. He testified that Way bill No. 6502 was for the damaged goods consigned to Jeanerette, Louisiana, and that was the way bill which he told the agent of the plaintiff line to present to Mrs. Fremin, but, instead, the agent presented way bill No. 6500 for the goods consigned to Louis Wormser of Franklin, Louisiana. This witness also testified that after he saw way bill No. 6500 on the day that the merchandise came into New Orleans, that it was not until approximately three weeks later when Mr. Barras came to New Orleans in an effort to try to trace the lost package that he again saw it and saw that it was signed by Mrs. Fremin. In other words, he had not previously known that Mrs. Fremin had signed for this lost carton of goods. He could not swear "that Mrs. Freeman did not go out to check and sign that other package later on when you were not there." He said that if she went to the dock, he did not know about it. Neither the defendant nor any of his witnesses charge McCoy on any other occasion of being guilty of any fraud or of getting them "to sign something that wasn't there." This witness was a brother-in-law to the defendant Barras.
On cross examination this witness admitted that they had experienced some minor shortages in shipments during the time of the joint tenancy with Akin Truck Line, also that the back door of this joint warehouse could not be locked at all and that the dock was wide open and that after they would leave at night other people could get into the warehouse.
Mrs. Fremin testified for the defendant that her duties were office clerk — "Typing, answering the phone, making pick up costs and checking freight now and then when Mr. Joe Dronet wasn't on the dock." She admits her signature on way bill 6500 and states that she did not personally check the receipt of this shipment of goods, and further testified that "Mr. McCoy came into the office and said that Joe Dronet had authorized me to sign the bill, but it was this other bill in which the carton was damaged, but he presented me with this one instead." On cross examination, Mrs. Fremin testified that she had on previous occasions signed receipts for freight on the statement of Mr. McCoy that the freight had been received and that she had no reason to doubt his word but that now and then, if it was a large shipment and Mr. Dronet was not on the dock, she would go check it. She testified that she signed this way bill 6500 because McCoy told her that Mr. Dronet said it was all right for her to sign it. Most of her testimony with regard to the alleged mix-up on way bill 6500 and the damaged carton of merchandise represented by way bill 6502 was obtained from information given her by Joe Dronet and was not within her own knowledge. She admits that she signed the six way bills offered in evidence by the plaintiff but could not remember whether she had personally checked any of them; that she had never, during the entire time she had known McCoy, had occasion or reason to doubt his truthfulness or veracity. This witness was a sister to the defendant, Barras.
As the Judge has given no written reasons, we do not know, for the record does not show, why he would disbelieve the testimony of the plaintiff and his witnesses and accept the statement of Dronet, witness for the defendant, that McCoy had substituted way bill 6500 for way bill 6502 and had fraudulently obtained the signature of Mrs. Fremin, authorized employee of the defendant truck line.
The testimony establishes the fact that this merchandise was hauled to New *Page 888 
Orleans by the plaintiff truck line, and McCoy testified positively that he personally put this package on defendant's side of the dock, which was the customary method of dealing with these shipments, and that he obtained Mrs. Fremin's signature on this way bill. The record shows that Mrs. Fremin signed similar way bills without question and we cannot see any testimony which proves that McCoy fraudulently substituted this way bill for No. 6502. In view of the fact that Mrs. Fremin was in the habit of signing these way bills without any question and in view of the fact that the plaintiff testified and offered positive proof of the delivery of the goods in question, together with the signed way bill by an agent of the defendant company, admitting delivery of this particular carton of goods, and in view of the fact that the defendant company bore the burden of proof on its special defense that the signature on the delivery receipt No. 6500 was fraudulently obtained and that the testimony fails to convince us of this fact or to overcome the positive testimony introduced by the plaintiff it is therefore ordered that the judgment of the District Court be reversed and that there now be judgment in favor of the plaintiff and against the defendant in the full sum of $152.75 with legal interest from judicial demand until paid and for all costs.